EVIDENTIARY RULINGS
The objections contained in each deposition are OVERRULED.
After reviewing the original Forms 21 and 26 which were submitted and approved by the Commission in companion I.C. File #963058, Defendants Exhibits #1 and #2 are ADMITTED into evidence.
 * * * * * * * * * * *
The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing, as
 STIPULATIONS
1. This case is subject to the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer from April, 1986, through January 16, 1991.
3. The plaintiffs average weekly wage is $600.00, yielding a compensation rate of $376.00.
 * * * * * * * * * * *
Based upon all of the competent, credible, and convincing evidence adduced at the initial hearing, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was not currently employed. He was last employed in January of 1991 for Crown Nissan. He suffered an admittedly compensable back injury on August 2, 1989, while he was employed with this defendant-employer.
2. The plaintiff originally saw Dr. Terrance Croin, a chiropractor, for his injury. Plaintiff treated with him through April, 1990. Plaintiff was out of work originally about four weeks and then went back to work. However, he missed several days through April, 1990. Plaintiff was compensated for his time out of work, for a total of ten weeks.
3. After April of 1990, plaintiff began seeing Dr. Gus Bloomquist, because his condition was continuing to get worse. Dr. Bloomquist prescribed a steroid dose pack and advised that plaintiff had a very severe lumbar strain. Plaintiff was taken out of work from April until July, 1990. Plaintiff was compensated for his time out of work during this period.
4. Plaintiffs condition improved until October or November, 1990, when he began having some swelling in his lumbar area. Plaintiff continued working until January 16, 1991, when his back became significantly worse. He went to the emergency room and was referred to Dr. Warburton, who prescribed plaintiff a steroid dose pack and Vicodin and placed plaintiff out of work.
5. Plaintiff was then referred to Dr. Vincent Paul, who prescribed plaintiff another steroid dose pack and performed various tests. Dr. Paul also administered steroid injections and ultimately performed surgery on March 12, 1991. Plaintiff was compensated for this time out of work, and his treatment was paid for by the defendant-carrier.
6. Plaintiff received many steroid treatments for pain following his original injury. From January 1991 to June 1991, plaintiff was treated with approximately four Medrol (steroid) dose packs and approximately eight epidural corticosteroid injections. Dr. Vincent Paul sent plaintiff for a series of three steroid injections in February, 1991, and Dr. Paul noted a Medrol (steroid) dosepak on March 22, 1991. On April 11, 1991, Dr. Paul put plaintiff on another Medrol (steroid) dosepak; and on April 24, 1991, Dr. Paul referred plaintiff for three epidural steroid injections (one per week for three weeks). At that time, plaintiff had completed use of the April 11, 1991 Medrol Dosepak. Dr. Urbvaniak noted that plaintiff had three steroid Dosepaks in 1991.
7. On May 1, 1991, at Moses H. Cone Memorial Hospital, plaintiff had an 80 mg. DepoMedrol (steroid) injection for post laminectomy syndrome, administered by Dr. Kevin Ossey, an anesthesiologist. Plaintiff experienced a significant adverse reaction to the steroids and on May 7, 1991, a second injection in the series was canceled on the recommendation of Dr. Ossey, because of plaintiffs paradoxical reaction to the epidural steroids. The paradox was that the steroids are intended to assuage pain, but instead they caused plaintiffs pain to worsen. Dr. Ossey noted that this paradoxical adverse reaction had been repeated on more than one occasion.
8. The prior paradoxical reactions notwithstanding, on June 20, 1991, at Moses H. Cone Memorial Hospital, Dr. Ossey injected plaintiff with another 80 mg DepoMedrol steroid. On July 3, 1991, plaintiff was injected with 40 mg of DepoMedrol corticosteroid, and on July 8, 1991, plaintiff received a third steroid injection.
9. In September, 1991, plaintiff was referred by Dr. Paul to Dr. T. Craig Derian. Dr. Derian diagnosed a re-herniated disc and recommended a spinal fusion, which was performed on December 17, 1991. The plaintiff did very well after this surgery, and he has not been treated for his back since Dr. Derian released him. In June 1992, Dr. Derian assigned plaintiff a twenty-five percent (25%) permanent partial disability rating to his back, for which plaintiff has received compensation.
10. Plaintiff received a letter in August 1992 from Delphine Goines, adjuster for the defendant-carrier. The letter addressed the payment of plaintiffs twenty-five percent (25%) permanent partial disability rating to his back, and that he would be afforded lifetime medical benefits. In an attempt to resolve his claim, and at the request of Ms. Goines, the plaintiff sent Ms. Goines a proposal that asked her for a post-secondary education (since he was unable to perform duties of a mechanic), temporary total disability compensation during that period of time, and medical benefits. As a result of that proposal, Ms. Goines agreed to allow plaintiff to attend Winston-Salem State University to obtain a college degree, to continue his temporary total disability compensation during that four years, to pay half of his tuition and books while he was there, and to pay him the twenty-five percent (25%) permanent partial disability rating assigned by Dr. Derian. Plaintiff expected to graduate from Winston-Salem State in June, 1996.
11. In June of 1992, about two years after plaintiffs first steroid injection, plaintiff developed groin pain and buttock pain, which radiated into his thigh; and he began to walk with a limp. On December 2, 1992, plaintiff consulted Dr. Anna Voytek, who prescribed a steroid injection in plaintiffs foot. However, the pain continued.
12. In July of 1993, seven months after the last steroid injection, plaintiff was diagnosed with avascular necrosis by Dr. T. Craig Derian, which resulted in a left hip replacement on January 10, 1994, performed by Dr. T. Parker Vail, at Duke University Medical Center. On March 21, 1994, plaintiff underwent a right hip fibular graft by Dr. James R. Urbaniak. The graft did not resolve plaintiffs symptoms, and on January 9, 1995, plaintiff received a total right hip replacement, performed by Dr. T. Parker Vail. The medical bills associated with the hip surgeries were paid by the defendant-carrier.
13. Prior to March 1991, plaintiff participated in occasional weekend beer drinking. During the period between March 1991 and December 1991, at the same time he was receiving steroid treatments, plaintiff drank an average of one six-pack per day. At the time, he was experiencing severe back pain, and he felt that he was using alcohol as an anesthetic. He also had financial concerns because of the untimeliness of his workers compensation payments. As a result of all of these factors, plaintiff contemplated suicide on more than one occasion, of which Ms. Goines was aware. During the years 1992-1995, plaintiff limited his alcohol consumption to approximately three to four beers each Friday and Saturday, basically the same amount he was drinking before March 1991.
14. Plaintiffs acquisition of avascular necrosis, which ultimately necessitated three hip surgeries, was a direct and natural result of the treatments plaintiff received for his original admittedly compensable injury by accident of August 2, 1989. The credible and convincing medical evidence in this case suggests that the avascular necrosis condition from which plaintiff suffered, in all likelihood, was caused, at least in part, by a combination of the steroidal treatments plaintiff received for his back injury and his excessive drinking during the periods he used alcohol as his self-medicating remedy for his back pain and depression. Plaintiffs drinking was insufficient to break the chain of causation between the original injury and the avascular necrosis.
15. As a result of plaintiffs admittedly compensable back injury of August 2, 1989, he was unable to successfully return to work as a mechanic. In June 1992, Dr. Derian released plaintiff to return to light duty work with lifting restrictions. Defendant-employer offered plaintiff a light duty job which he did not accept. Instead, he entered into an agreement in August 1992 with defendant-employer to receive a college education. Plaintiff was unable to complete his college studies on time or to return to gainful employment due to continued pain, and ultimately because of the necessity for hip surgeries due to the avascular necrosis. In October 1994, plaintiff received a lump sum payment of temporary total disability compensation through December 1996. Both of these payments were made without a written agreement submitted to the Industrial Commission for approval, as required by statute. Ms. Goines agreed to pay the temporary total disability compensation in a lump sum through December, 1996, even though plaintiff was scheduled to graduate in June 1996 because she felt it was the right thing to do. Ms. Goines and plaintiff had weekly phone contact, and they had established a good relationship.
16. The intention of the agreement between plaintiff and defendants was to provide plaintiff with disability benefits during his term in school and even beyond his expected graduation date. However, because of the subsequent problems plaintiff experienced with his avascular necrosis, plaintiff was not expected to graduate until at least May, 1998. Since plaintiff was unable to work and was a full-time student at the time of the initial hearing, he is entitled to temporary total disability compensation at least through the date of his expected graduation. In the event plaintiff is unable to return to work upon graduation, then he is entitled to temporary total disability compensation until further order of the Industrial Commission.
17. In August 1992, plaintiff received a lump sum payment for the twenty-five percent (25%) permanent partial disability to his back, (75 weeks at $376.00 per week) and at the same time, he was receiving weekly temporary total disability payments. Plaintiff would not have been entitled to the temporary total benefits and the permanent partial disability benefits for the same period of time.
18. Plaintiff sustained a fifty percent (50%) permanent partial disability rating for each leg based on the stiffness related to multiple surgeries and the occasional pain associated with his hip replacements. Plaintiff has not been paid for the permanent partial disability rating for each leg.
19. The previous five percent permanent partial disability benefits paid to plaintiff in September 1990 was paid after plaintiff had returned to work. Since plaintiff was not receiving temporary total disability benefits at the same time, defendants are not entitled to a credit for this payment. This five percent permanent partial disability payment was paid pursuant to a Form 26 Agreement which was approved by the Industrial Commission.
20. Since the Fall of 1995, plaintiff has been consistently attending Winston-Salem State University. He is able to sit through 40 hours of class per week, even though he becomes stiff while sitting. At the time of the initial hearing, plaintiff had a 3.68 grade point average in medical technology.
21. Plaintiffs current physical limitations include soreness after twenty minutes of standing, and he is unable to climb steps. Plaintiff cannot walk further than one quarter of a mile, and cannot bend repeatedly at the waist. He must limit his twisting and has a lifting restriction of forty-five pounds or less.
22. Defendant has not shown that plaintiff was capable of earning wages during the period he has been attending college. It was reasonable for defendant to allow plaintiff to graduate from college before attempting to rebut plaintiffs presumption of continuing disability by attempting to show that there are jobs in the competitive job market that plaintiff can get.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on August 2, 1989 arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of his admittedly compensable injury by accident to his back of August 2, 1989, plaintiff was temporarily totally disabled during various intermittent periods through January 16, 1991 for which he has already been compensated. Since he last worked on January 16, 1991, plaintiff has remained temporarily totally disabled due to causes and conditions arising from his injury by accident to his back.
3. Plaintiff sustained a twenty-five percent (25%) permanent partial disability rating to his back, which was paid in one lump sum (75 weeks x 376.00) by the defendants in August 1992. Plaintiff was not entitled to permanent partial disability benefits while receiving temporary total disability benefits. N.C. Gen. Stat. 97-29.
4. Plaintiffs acquisition of avascular necrosis, which eventually necessitated left and right hip surgeries, was causally related to and was a natural consequence of his admittedly compensable injury by accident of August 2, 1989, in that the avascular necrosis was caused by a combination of steroidal treatments plaintiff was administered for back pain, and his increased alcohol consumption in plaintiffs ill-fated attempt to further alleviate his physical and mental pain. Plaintiff is entitled to compensation for disability caused by his avascular necrosis and subsequent hip surgeries. N.C. Gen. Stat. 97-29.
5. As a result of his admittedly compensable injury by accident of August 2, 1989, and plaintiffs subsequent acquisition of avascular necrosis and resulting hip surgeries, plaintiff is entitled to temporary total disability compensation from January 17, 1991 through at least the date of his graduation in May, 1998, and thereafter continuing until he returns to work or until further order of the Industrial Commission. Defendants are entitled to a credit for all temporary total disability compensation previously paid to plaintiff and for the 75 weeks of permanent partial disability compensation previously paid to plaintiff. N.C. Gen. Stat. 97-42.
6. As a result of his admittedly compensable injury by accident of August 2, 1989, plaintiffs subsequent acquisition of avascular necrosis and resulting hip surgeries; plaintiff sustained a fifty percent (50%) permanent partial disability to his left hip and a fifty percent (50%) permanent partial disability to his right hip. Plaintiff is entitled to permanent partial disability compensation for the rating to his hips and back after his period of temporary total disability ends. N.C. Gen. Stat. 97-31.
7. As a result of his admittedly compensable injury by accident of August 1, 1989 and plaintiffs subsequent acquisition of avascular necrosis, plaintiff incurred medical expenses for treatment of his back and hips. Plaintiff may require additional medical treatment in the future to effect a cure of or provide relief for his condition, and he is entitled to such treatment for his lifetime. N.C. Gen. Stat. 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. For his temporary total disability, defendants shall pay to plaintiff temporary total disability compensation at the rate of $376.00 per week from January 17, 1991 through the date of his graduation in May, 1998 and thereafter continuing until he returns to work or until further order of the Industrial Commission. Defendants are allowed a credit for temporary total disability compensation previously paid to plaintiff and for the 75 weeks of permanent partial disability compensation paid to plaintiff.
2. Defendants shall pay all medical expenses plaintiff has incurred as a result of his admittedly compensable injury by accident of August 2, 1989, his subsequent acquisition of avascular necrosis, his left and right hip surgeries, and any future medical expenses necessary to effect a cure or provide relief of these conditions, payable for plaintiffs lifetime.
3. Subject to defendants credit, an attorneys fee of twenty-five percent (25%) of the compensation due plaintiff under paragraphs one of this Award is approved for plaintiffs counsel. Any accrued amount shall be deducted from the sums due plaintiff and paid directly to plaintiffs counsel; plaintiffs attorney shall receive every fourth check from any future compensation owed the plaintiff.
4. Any compensation payable for plaintiffs fifty percent (50%) permanent partial disability to his left hip (which is treated as a part of the leg) and for his fifty percent (50%) permanent partial disability to his right hip, (which is treated as a part of the leg) shall not be due and payable until the end of plaintiffs temporary total disability period and this issue is therefore RESERVED.
5. Defendant shall pay the costs due this Commission.
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ____________________ LAURA K. MAVRETIC COMMISSIONER
Participated on panel but retired prior to filing date
J. HOWARD BUNN, JR. CHAIRMAN
BSB:md